**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LIFE SPINE, INC., | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) Case No. 17-cv-3458 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| MEDCO CONSULTANTS, LLC | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff/Counter-Defendant, Life Spine, Inc. brings this action against Defendant/Counter-Plaintiff Medco. Consultants, LLC ("Medco") alleging conversion and breach of contract. In its counterclaims, Medco alleges that Life Spine committed breach of contract and breach of the Illinois Sales Representative Act, 820 ILCS § 120/0.01. Both Life Spine and Medco have filed motions for summary judgment for their respective claims and against the opposing parties' claims. For the reasons explained below, Medco's motion [61] for summary judgment is denied and Life Spine's motion [67] for summary judgment is granted in part and denied in part.

**Background**

The following facts are undisputed unless otherwise noted. Life Spine is a Delaware corporation, with its principal place of business in Huntley, Illinois. Life Spine manufactures and markets medical devices to medical specialists and sells its products through distributors. Medco is a limited liability company that sells medical devices and has its principal place of business in Michigan. Christopher Maher is the sole member of Medco. Maher was also general manager of NorthStar Consultants, LLC, Medco's predecessor as the distributor of Life Spine's products in Southeast Michigan. Life Spine and NorthStar terminated their relationship on May 31, 2015.

1

On June 1, 2015, Life Spine began a distribution relationship with Medco where Medco would sell Life Spine's products. These products included: surgical kits of implant trays, spinal implants, drills, compressors, screwdrivers, and rod manipulators. Life Spine and Medco executed a sales agreement ("Medco Sales Agreement" or "Agreement") that documented their obligations. The parties agreed that Life Spine would pay Medco 42% commission for sales of Life Spine products. The Medco Sales Agreement also contained a quota of $250,000 minimum sales per quarter and two surgeries per month. Life Spine asserts, and Medco disputes, that Life Spine's obligation to pay the commission was conditioned on Medco meeting the sales quota. The Medco Sales Agreement allowed Life Spine to set off unpaid commissions against any amount Medco owed Life Spine due to inventory shortages.

The Medco Sales Agreement provided that upon request, Medco had to obtain a "Returned Merchandise Authorization" form and return all of Life Spine's products within 72 business hours of its request. The Agreement also stated that upon termination of the business relationship, Medco was required to "promptly return" all inventory to Life Spine. Life Spine sent Medco over 3,000 separate units of product valued from $200 to $16,000 per unit.

Medco did not attain its sales quota of $250,000 for any quarter during the business relationship with Life Spine. However, Life Spine paid Medco a commission for the months of July, August, September, October, and November 2015. The commission rate did not amount to 42% of the sales as provided in the Medco Sales Agreement. On February 1, 2016, Life Spine terminated its distribution relationship with Medco and informed Medco that it would make the commission payments for December 2015 and January 2016 once all its inventory was returned.

In February 2016, Life Spine representative, Jason Grumbacher visited Medco's facility to inspect and retrieve Life Spine's products from Medco. After Grumbacher identified that certain items from his inventory list were missing, he refused to pay the commission for December 2015

and January 2016. As such, Grumbacher was not allowed to take Life Spine's remaining products. Medco maintains that Grumbacher's inventory list was inaccurate. Since that time, Life Spine made several requests for Medco to return its inventory. On May 21, 2018 Magistrate Judge Cole issued an order [48] requiring Medco to return Life Spine's products that it had in its possession. The value of the products recovered by Life Spine is valued at over 5 million. The Medco Sales Agreement allowed for a "shortage allowance" where Medco would be excused for any shortage that was not returned in the amount of 5% of its total sales. Life Spine asserts that Medco owes it $55, 114.75 for missing and damaged products after accounting for the shortage allowance.

In Count I of its first amended complaint, Life Spine alleges that Medco is liable for conversion for its refusal to return Life Spine's products prior to the court order. In Count II, Life Spine alleges breach of contract for Medco's failure to return Life Spine's products and failure to meet the sales quota according to the Agreement.

In Count I of its counterclaims, Medco alleges breach of contract against Life Spine for failure to pay commission rates in accordance with the Agreement, improperly terminating the Agreement without notice, and improperly demanding its products be returned in full. In Count IV, Medco states that Life Spine violated the Illinois Sales Representative Act 820 ILCS § 120/0.01 for failure to pay the agreed-to commission rates. Medco has dropped Counts II and III since the filing of this motion.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that there is no genuine issue of material

3

fact, and if done, judgment as a matter of law should be granted in its favor. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). "To determine whether genuine issues of material fact exist, we ask if 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (citing *Anderson*, 477 U.S. at 251-52). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Aregood v. Givaudan Flavors Corporation*, 904 F.3d 475, 479 (7th Cir. 2018).

**Discussion**

*Breach of Contract*

In the complaint and counterclaims, both Medco and Life Spine allege that the other party committed breach of contract.

In Illinois, to prevail on a breach of contract claim, a plaintiff must establish (1) the existence of a valid contract; (2) that it performed under the contract; (3) breach by the defendant; and (4) damages. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 577 (7th Cir. 2001) (citing *Hickox v. Bell*, 552 N.E.2d 1133, 1143, 195 Ill.App.3d 976, 992, 142 Ill. Dec. 392 (1990)).

Medco seeks summary judgment on its breach of contract claim on five grounds: (1) Life Spine's failure to pay 42% in commission from June through November 2015; (2) Life Spine's failure to pay commission for December 2015 and January 2016; (3) Life Spine's improper termination of the Agreement on February 1, 2016; (4) Life Spine's breach of the Agreement when it demanded the return of all inventory; and (5) Life Spine's demand for Medco to execute an inaccurate inventory list.

The Court finds that summary judgment is not appropriate on Medco's breach of contract claim. First, there is an issue of fact regarding Medco's performance. Life Spine argues, and Medco does not contest, that Medco failed to meet its sales quota minimum of $250,000 per quarter. *See*

4

Dkt. 77 at 15. To establish breach of contract in Illinois, the plaintiff must show that "he has himself substantially complied with all material terms of the agreement. . . ." *Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011) (citing *George F. Mueller & Sons, Inc. v. N. Ill. Gas Co.*, 336 N.E.2d 185, 189, 32 Ill.App.3d 249, (1975)). Here, because there is an issue of fact regarding Medco's performance, it is not entitled to breach of contract as a matter of law. As such, Medco's motion for summary judgment is denied and Life Spine's motion for summary judgment against Medco's breach of contract claim is denied.

Similarly, the Court finds that summary judgment is not appropriate on Life Spine's breach of contract claim. Life Spine alleges that Medco breached the Medco Sales Agreement when it (1) failed to meet its minimum sales goal of $250,000 per quarter and (2) failed to return Life Spine's products after the request. However, the evidence supports, and Life Spine does not dispute, that it failed to pay Medco the agreed upon 42% in commission during its business relationship. Life Spine argues that it was not required to pay any commission because Medco failed to meet its sales goal for any quarter. But only material breaches justify non-performance by the other party. *See InsureOne Independent Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1027, 2012 IL App. (1st) 092385 ¶ 43, 364 Ill.Dec. 451, 464 (2012).

Life Spine has not shown that Medco's failure to meet the sales quota was a material breach of the Agreement. The materiality of a party's breach is generally a fact question reserved for a jury. *See International Production Specialists, Inc. v. Schwing America, Inc.*, 580 F.3d 587, 594 (7th Cir. 2009); *Mohanty v. St. John Heart Clinic*, 866 N.E.2d 85, 96, 225 Ill.2d 52,72, 310 Ill.Dec. 274, 285 (2006). The Agreement does not explicitly condition the commission on Medco meeting the sales quota. This is especially apparent considering that the quota was based on minimum sales per quarter while the commissions were to be paid monthly. Dkt. 66-1 at 18-19. Therefore, Life Spine's own non-performance is not excused. As such, there is a genuine issue for trial as to whether Life Spine

5

performed under the Agreement and whether Medco materially breached the Agreement by not meeting the sales quota. Because there is an issue fact regarding Life Spine's performance, Life Spine's motion for summary is also denied as to its breach of contract claim.

*Illinois Sales Representative Act, 820 ILCS § 120/0.01.*

In raising its claim for violation of the Illinois Sales Representative Act, Medco asserts that Life Spine failed to make commission payments. However, because the evidence shows that Medco did not meet its sales quota, there is an issue of fact as to whether Life Spine owed Medco the agreed-to commission. Further, the Agreement provides that Life Spine could withhold unpaid commission payments to offset inventory shortages. Dkt. 77 at 10. Life Spine provides evidence in the form of a declaration from employee, Jennifer Jesse, that some of its products are either missing or were damaged while in Medco's possession. Dkt. 69-1 at 4. Accordingly, Medco's motion for summary judgment is denied. Likewise, because there is an issue of fact regarding this claim, Life Spine's motion for summary judgment against this claim is also denied.

*Conversion*

Life spine moves for summary judgment on its conversion claim. To establish conversion in Illinois, Life Spine must prove "(1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over its property; (2) its right in the property; (2) the plaintiff's right to immediate possession of the property, absolutely and unconditionally, and (4) the plaintiff's demand for possession of the property." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 285, 346 Ill.App.3d 996, 1003, 282 Ill. Dec. 305, 310 (2004).

Life Spine argues Medco committed conversion from February 2016 until Magistrate Judge Cole's order on May 21, 2018, by refusing to return its products despite numerous demands. The parties do not dispute that Life Spine was the rightful owner of the products in Medco's possession. There is also no dispute that Life Spine demanded the return of its products. Medco argues,

however, that it was not obligated to immediately return Life Spine's products because Life Spine first materially breached the Agreement. Dkt. 76 at 3. Specifically, Medco points to Life Spine's (1) failure to make commission payments according to the Medco Sales Agreement and (2) Life Spine's failure to terminate the business relationship in accordance with the Agreement.

Medco does not provide, and the Court has not found, any case law supporting the argument that a breach of contract is a defense to conversion. Conversion is an intentional tort. *Prairie State Bank & Trust v. Deere Park Associates*, 2014 IL App (4th) ¶ 38, 2014 WL 4557298 at *6. As Medco points out, the Agreement required Life Spine to give 60 days' notice before terminating the business relationship. But even if Life Spine would have given Medco 60 days' notice of termination on February 1, 2016, Medco would have had to "promptly" return Life Spine's products on April 1, 2016. However, Medco refused to return Life Spine's products until May 21, 2018. There is simply no defense for Medco to have maintained control over Life Spine's products for over two years. Damages are the remedy for any alleged breach of contract by Life Spine. *See In re Illinois Bell Telephone Link-Up II*, 994 N.E.2d 553, 558, 2013 IL App (1st) 113349 ¶ 19, 373 Ill.Dec. 784, 789 (2013). While a trial is necessary to determine damages, the Court finds that Life Spine has carried its burden in showing that it is entitled to judgment as a matter of law regarding its conversion claim.

**Conclusion**

For the forgoing reasons, Medco's motion [61] for summary judgment is denied. Life Spine's motion [67] for summary judgment is granted as to its conversion claim and denied as to its breach of contract claim.

**IT IS SO ORDERED.**

Date: 3/21/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge